**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-02819-WDM-CBS

ZAYED OBEIDAT and
JAMILEH OBEIDAT
    Plaintiffs,

v.

MARWAN CHATILA,                              JURY TRIAL DEMANDED
JEANETTE CHATILA,
M & J CARPET CLEANING PARTNERSHIP,
M & J CARPET CLEANING, INC,
GREGORY BELL, and
BELL, GOULD AND SCOTT, P.C.
    Defendants.

---

**RESPONSE TO MOTIONS TO DISMISS AND
MOTION TO AMEND COMPLAINT**

---

      Plaintiffs Zayed Obeidat and Jamileh Obeidat, by and through their attorney of record, Eric Hayes Petty, respond to Defendants' Motions to Dismiss, and respectfully request that the Court grant Plaintiffs' motion to further amend their complaint.

**PROCEDURAL POSTURE**

      Plaintiffs have filed an amended complaint (Doc. # 23). Defendants Marwan Chatila, Jeanette Chatila, M & J Carpet Cleaning Partnership and M & J Carpet Cleaning, Inc. have filed a Motion to Dismiss the Amended Complaint (Doc. # 28). Defendant Marwan Chatila has filed an Answer to Claim Three of the Amended Complaint (Doc. # 29). Defendants Gregory Bell

and Bell, Gould and Scott, P.C. have filed a separate Motion to Dismiss the Amended Complaint (Doc. # 30).

### STATEMENT OF COMPLIANCE WITH D.C.COLO.LCivR 7.1A

Plaintiff's attorney certifies that he has consulted with Defendants' counsels and has made reasonable, good faith efforts to resolve the disputed matter. Defendants Marwan Chatila, Jeanette Chatila, M & J Carpet Cleaning Partnership, and M & J Carpet Cleaning, Inc. oppose Plaintifffs' Motion to Amend. Defendants Gregory Bell and Bell, Gould and Scott, P.C. have not yet taken a position regarding Plaintiffs' Motion to Amend.

### STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted only if "it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegation of the complaint as true and construing them in the light most favorable to the plaintiff." *Fuller v. Norton*, 86 F.3d 1016, 1020 (10th Cir. 1996).

"The court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204-11 (10th Cir. 2006) (collecting cases).

### STATEMENT OF FACTS

Plaintiffs Zayed and Jamileh Obeidat live in Jordan. Since 1990 they believed that they owned fifty percent of M & J Carpet Cleaning. 2d Am. Compl. ¶ 1. In 2009, however, and much to their surprise, Jamileh Obeidat's brother Marwan Chatila told them that they were not owners and never had been. *Id*.

In 1986 they loaned Marwan $15,000 to form M & J Carpet Cleaning. *Id*. ¶ 2. Marwan was supposed to repay the loan at the rate of $400 per month, but by 1990 had repaid only $6,000. *Id*. After discussing the issue and the business's then-current lack of profitability, Marwan, Zayed, and Jamileh decided that the best solution would be to convert the loan into an equity interest, so that Marwan would only make payments if the business was profitable. *Id*. In 1990 they all signed an "Amendment to Partnership Agreement for M & J Carpet Cleaning ("the Agreement"), which gave Zayed and Jamileh Obeidat a fifty percent interest in the business. *Id*.

In most years, Zayed and Jamileh received their share of profits in the form of checks from M & J Carpet Cleaning Partnership ("the Partnershp"), and later, checks from M& J Carpet Cleaning, Inc. ("the Corporation"). *Id.* ¶ 3. In some years, they received no checks because Marwan, the manager of the business, explained that the business wasn't generating any profits. *Id*.

The Agreement gave Marwan Chatila a sales commission of between twenty and twenty-five percent, so Zayed and Jamileh Obeidat knew that the business could be viable and still not distribute any profits to them. *Id*. ¶ 4.

In 2007 Zayed and Jamileh's son Marwan Obeidat visited Colorado and reported to his parents that the business appeared to be larger and more robust than Marwan Chatilla had described. *Id.* ¶ 5. The next year, in 2008, Jamileh Obeidat visited the business and started to have concerns that Marwan Chatila was not being truthful with them regarding the size of the business and its profitability. *Id*. Zayed and Jamileh discussed the issue with Marwan Chatila, and again visited Colorado in 2009. *Id*. After discussions with Marwan Chatila proved futile, Zayed and Jamileh threatened suit for their proper share of the profits. *Id*. In response, Marwan

Chatila explained that Zayed and Jamileh were not owners and never had been. Zayed and Jamileh Obeidat were dumbfounded. *Id*.

Zayed and Jamileh Obeidat began investigating the legal status of their investment. Marwan Chatila, through his attorney Gregory Bell, explained that the Agreement was a "legal nullity" that did not transfer any interest to Plaintiffs, and that Plaintiffs' original loan to Marwan Chatila had been repaid by 1996. *Id*. ¶ 6. Plaintiffs determined that the Agreement purported to transfer a partnership interest to Plaintiffs without the express consent of all partners, and so was likely legally ineffective. *Id*.

## ARGUMENT

Defendants' Motions to Dismiss should not be granted because Plaintiffs have stated valid claims against all defendants, and Plaintiffs did not discover Defendants' malfeasance until 2009. "[U]nder both Colorado and federal law the limitations period is tolled until the aggrieved party learns of the fraud or should have discovered it by the exercise of reasonable diligence." *Noland v. Gurley*, 566 F. Supp. 210, 216 (D. Colo. 1983) (quoting *Hackbart v. Holmes*, 675 F.2d 114, 1120 (10th Cir. 1982)).

Plaintiffs' Second Amended Complaint removes claims five and six of the Amended Complaint (for securities fraud) because the statute of limitations likely has expired. *See* COLO. REV. STAT. § 11-51-604(8).

### I.   PLAINTIFFS HAVE STATED CLAIMS AGAINST ALL DEFENDANTS

Defendants' Motions to Dismiss should not be granted because Plaintiffs have stated claims against all defendants.

4

### *a.     Plaintiffs' ownership interest disappeared between 1990 and 2009.*

Like a magician making an elephant disappear, Defendants claim that Plaintiffs' ownership interest ceased somewhere between 1990, when the Agreement was signed, and 2009, when Marwan Chatila informed Plaintiffs that they did not have an equity interest in the business, and never had.

In 1990 Plaintiffs purchased a fifty percent interest in the Partnership. Am. Compl. ¶ 4 (Doc. # 23); Agreement at 1 (Doc. # 28-1).  They received payments from the Partnership in 1992 and 1993. 2d Am. Compl. ¶ 14.  After the Partnership was dissolved in 1996 and a Corporation formed, they received regular payments from the Corporation.  Am. Compl. ¶¶ 9-12 (Doc. # 23).  Plaintiffs had no reason to doubt that they were co-owners of the business until 2009, when Marwan Chatila stated that they had no equity interest in the business.

Although Plaintiffs believe that it was Defendants' original intent to defraud Plaintiffs with a legally ineffective agreement, it is also possible that Defendants learned that the Agreement was legally ineffective at a later date, and then took opportunity to deny that Plaintiffs were owners in the business.

The most important factual question for pleading purposes is when Defendants gained knowledge that the Agreement was likely ineffective.  If Defendants knew that the Agreement was legally ineffective when it was created, then defendants committed fraud and breach of contract.  *See* Am. Compl. ¶¶ 27-30, 52-58 (Doc. # 23); *Bemel Assoc., Inc. v. Brown*, 435 P.2d 407, 409 (1967) (elements of fraud).

If Defendants believed that Plaintiffs were owners in the Partnership, then Defendants should be directed to properly wind up the Partnership and deliver fifty percent (50%) of the

shares to plaintiffs.  *See* Am. Compl. ¶¶ 24-26, 31-38 (Doc. # 23); *Hooper v. Yoder,* 737 P.2d 852, 858-59 (Colo. 1987) (*en banc*) (winding up of partnership incomplete pending issuance of corporate stock).

If Defendants believed that the Agreement transferred an ownership interest to Plaintiffs, and then later came to believe that the Agreement was legally ineffective, then Defendants should be estopped from denying that Plaintiffs are owners of fifty percent (50%) of the Corporation's stock and a constructive trust established.  *See* Am. Compl. ¶¶ 31-38 (Doc. # 23); *Botkin v. Pyle*, 14 P.2d 187, 191 (Colo. 1932); *Page v. Clark*, 592 P.2d 792, 798 (Colo. 1979).

### b.   Plaintiffs' fraud claim is pleaded with particularity.

Plaintiff's claim for common law fraud is pleaded with particularity, and should not be dismissed.

FED. R. CIV. P. 9(b) requires that allegations of fraud must state with particularity the circumstances constituting fraud or mistake.  "Rule 9(b) . . . only requires identification of the circumstances constituting fraud or mistake."  *Trussel v. United Undersriters, Ltd.*, 228 F. Supp. 757, 774 (D. Colo. 1964).

Plaintiffs have met the formal pleading requirements for common law fraud in Colorado. *See Bemel Assoc., Inc*, 435 P.2d at 409; Am. Compl. ¶¶ 52-58 (Doc. # 23), 2d Am. Compl. ¶¶ 48-56.

Although the legal issues contained in the Agreement may not be immediately apparent, it is virtually inconceivable that an attorney could have constructed the Agreement with the intent that it be legally effective.  The Agreement purports to eliminate Jeanette Chatila as a partner without her consent.  *See* Am. Compl. ¶¶ 4-5 (Doc. # 23); Agreement at 1,3 (Doc. # 28-

1). It is reasonable to assume that the author of the Agreement, Gregory Bell, must have written this phrase with the intent that the Agreement be legally ineffective, and with the intent to defraud Plaintiffs.

Plaintiffs have pleaded their common law fraud claim with particularity and with all the elements required by law.

## II.   PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED

Plaintiffs' claims are not time-barred because Plaintiffs' causes of action did not accrue until the date of discovery of Defendants' malfeasance. Because Plaintiffs received payments from the Partnership and the Corporation, Plaintiffs' causes of action did not accrue until 2009, when Marwan Chatila stated that Plaintiffs were not owners and never had been.

### *a.   Plaintiffs' cause of action did not accrue until the date of discovery.*

The Court should deny Defendants' Motions to Dismiss because Plaintiffs' cause of action did not accrue until the date that Plaintiffs discovered they were not shareholders in the Corporation.

A cause of action does not accrue until the date that a plaintiff discovers his injury. *Goff v. Plains Sec. Corp.*, 183 P.2d 262, 263-64 (Colo. 1947) (*en Banc*); *Miller v. Goff*, 68 P.2d 915, 917 (Colo. 1937); *Sternholm v. Life Ins. Co. of N. Am.*, 782 P.2d 810, 811 (Colo. App. 1989); *Noland*, 566 F. Supp. at 216.

Plaintiffs had no notice of any injury because they continued to receive payments, first from the Partnership, then from the Corporation. 2d Am. Compl. ¶¶ 14-17.

Defendants' contention that Plaintiffs should have demanded to examine the Partnership's books in 1991 when no payments were made to Plaintiffs is without merit. The Agreement provides Marwan Obeidat with a sales commission of between twenty and twenty-five percent, Agreement ¶ 6 (Doc. # 28-1), so it was possible for the Partnership to generate significant revenue without owing payments to Plaintiffs. Additionally, the Partnership's lack of profitability was the reason that the original loan was converted into an equity interest by the Agreement, so Plaintiffs were not surprised that the Partnership initially generated no profits.

Defendants' contention that Plaintiffs should have demanded to examine the Corporation's books when the Partnership was dissolved is similarly without merit. Plaintiffs received payments from the Corporation in 1998, 2000, 2001, 2002, 2003, 2005, and 2006. Am. Compl. ¶¶ 9-11 (Doc. # 23). These payments reasonably caused Plaintiffs to believe that they were stockholders in the Corporation.

Marwan Chatila told Plaintiffs in 2003 and 2006 that the business was losing money and no payments were due. *Id.* ¶ 12. When a defendant uses false statements to keep a plaintiff in ignorance of the true facts so that he does not discover his loss, the statute of limitations does not run until the plaintiff discovers the truth. *Rogers v. Rogers*, 44 P.2d 909, 910-11 (Colo. 1935).

Plaintiffs were intentionally kept in ignorance by Defendants, by virtue of the payments to Plaintiffs coupled with Marwan Chatila's occasional statements that the business was losing money and no profits were due to be distributed under the Agreement.

### b. *When an action accrues is a question of fact.*

Defendants' Motions to Dismiss should be denied because when an action accrues is a question of fact.

"The time when a plaintiff discovered, or through the use of reasonable diligence should have discovered, the negligent conduct is normally a question of fact which must be resolved by the trier of fact." *Winkler v. Rocky Mountain Conference of the United Methodist Church*, 923 P.2d 152, 158-59 (Colo. App. 1995).

The question of whether or not Plaintiffs exercised reasonable diligence is inherently fact-based, and should not be decided by Defendants' Motions to Dismiss. "[T]he duty of reasonable diligence is an obligation imposed by law solely under the peculiar circumstances of each case, including existence of a fiduciary relationship, concealment of the fraud, opportunity to detect it, position in the industry, sophistication and expertise in the financial community, and knowledge of related proceedings." *deHaas v. Empire Petroleum Co.*, 435 F.2d 1223, 1226 (10th Cir. 1970).

"Only if plaintiff had sufficient notice . . . will the statute of limitations be a bar." *Id*.

Defendants conflate Plaintiffs' duty to investigate whether Marwan Chatila properly distributed profits under the Agreement with Plaintiffs' duty to investigate whether or not they were owners in the business. While it may be argued that Plaintiffs should have demanded to see business records during periods when Marwan Chatila claimed that the business was losing money, the payments made to Plaintiffs by the Partnership and the Corporation caused Plaintiffs to reasonably believe that they were partners in the Partnership and shareholders in the Corporation.

"In assessing the reasonableness of plaintiff's failure to investigate, we should also consider that the officers and directors occupy a fiduciary duty in regard to the stockholders." *Id.* at 1227.

Marwan Chatila occupied a fiduciary duty in regard to Plaintiffs, both as the managing partner of the Partnership, and as an officer of the Corporation. As such, Marwan Chatila had a duty of full disclosure to Plaintiffs. *Goff*, 183 P.2d at 263-64. Plaintiffs were not under the same strict requirement of inquiry as would have been the case had Plaintiffs been dealing with a stranger. *Id.* at 264.

The question of whether or not Plaintiffs exercised reasonable diligence is a question of fact that should be decided by the trier of fact. Defendants' Motions to Dismiss should be denied.

## CONCLUSION

Defendants' Motions to Dismiss should be denied.

Plaintiffs have stated valid claims against all defendants. The fraud claim is pleaded with particularity and conforms with Colorado's pleading requirements.

Defendants' contention that the statute of limitations has run is incorrect, because Plaintiffs' action did not accrue until Marwan Chatila told them that they were not owners in the business, and they became aware of their injury. The question of whether or not Plaintiffs exercised reasonable diligence is a case-specific question of fact that should be decided by the trier of fact. Moreover, Marwan Chatila's fiduciary relationship with Plaintiffs results in a lower burden of inquiry for Plaintiffs.

Defendants have not demonstrated that Plaintiffs are unable to state a claim upon which relief can be granted. Defendants' Motions to Dismiss should be denied.

Dated: April 11, 2011

Respectfully submitted,

/s/ Eric Hayes Petty
Eric Hayes Petty, CO 41460
Rocky Mountain Legal Counsel, P.C.
2000 S. College Ave, Suite 220
Fort Collins, CO 80525-1484
(970) 416-7652
eric.petty@rmlegalcounsel.com

Attorney for
Zayed Obeidat and
Jamileh Obeidat
PO Box 2449
Irbid, Jordan
Phone:  0096227101109

## CERTIFICATE OF SERVICE

I, Eric Hayes Petty, hereby certify that a true copy of the foregoing RESPONSE TO MOTIONS TO DISMISS AND MOTION TO AMEND COMPLAINT was filed with the Court and served upon Marwan Chatila, Jeanette Chatila, M & J Carpet Cleaning Partnership, M & J Carpet Cleaning, Inc., Gregory Bell, and Bell, Gould and Scott, P.C. via ECF on the 11th day of April, 2011.

/s/ Eric Hayes Petty

Eric Hayes Petty