## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-02819-WDM-CBS

ZAYED OBEIDAT and
JAMILEH OBEIDAT
    Plaintiffs,

v.

MARWAN CHATILA,                                JURY TRIAL DEMANDED
JEANETTE CHATILA,
M & J CARPET CLEANING PARTNERSHIP,
M & J CARPET CLEANING, INC,
GREGORY BELL, and
BELL, GOULD AND SCOTT, P.C.
    Defendants.

---

### SECOND AMENDED COMPLAINT
---

Plaintiffs Zayed Obeidat and Jamileh Obeidat, by and through their attorney of record, Eric Hayes Petty, allege the following:

### OVERVIEW

1.    Plaintiffs Zayed and Jamileh Obeidat live in Jordan.  Since 1990 they believed that they owned fifty percent of M & J Carpet Cleaning.  In 2009, however, and much to their surprise, Jamileh Obeidat's brother Marwan Chatila told them that they were not owners and never had been.

2. In 1986 they had loaned Marwan $15,000 to form M & J Carpet Cleaning. Marwan was supposed to repay the loan at the rate of $400 per month, but by 1990 had repaid only $6,000. After discussing the issue and the business's then-current lack of profitability, Marwan, Zayed, and Jamileh decided that the best solution would be to convert the loan into an equity interest, so that Marwan would only make payments if the business was profitable. In 1990 they all signed an "Amendment to Partnership Agreement for M & J Carpet Cleaning ("the Agreement"), which gave Zayed and Jamileh Obeidat a fifty percent interest in the business.

3. In most years, Zayed and Jamileh received their share of profits in the form of checks from M & J Carpet Cleaning Partnership, and later, checks from M& J Carpet Cleaning, Inc. In some years, they received no checks because Marwan, the manager of the business, explained that the business wasn't generating any profits.

4. The Agreement gave Marwan Chatila a sales commission of between twenty and twenty-five percent, so Zayed and Jamileh Obeidat knew that the business could be viable and still not distribute any profits to them.

5. In 2007 Zayed and Jamileh's son Marwan Obeidat visited Colorado and reported to his parents that the business appeared to be larger and more robust than Marwan Chatilla had described. The next year, in 2008, Jamileh Obeidat visited the business and started to have concerns that Marwan Chatila was not being truthful with them regarding the size of the business and its profitability. Zayed and Jamileh discussed the issue with Marwan Chatila, and again visited Colorado in 2009. After discussions with Marwan Chatila proved futile, Zayed and Jamileh threatened suit for their proper share of the profits. In response, Marwan Chatila

explained that Zayed and Jamileh were not owners and never had been. Zayed and Jamileh Obeidat were dumbfounded.

6. Zayed and Jamileh Obeidat began investigating the legal status of their investment. Marwan Chatila, through his attorney Gregory Bell, explained that the Agreement was a "legal nullity" that did not transfer any interest to Plaintiffs, and that Plaintiffs' original loan to Marwan Chatila had been repaid by 1996. Plaintiffs determined that the Agreement purported to transfer a partnership interest to Plaintiffs without the express consent of all partners, and so was likely legally ineffective.

7. As Plaintiffs reconsidered their investment in light of these new developments, they developed the following hypothesis: Marwan Chatila's attorney, Gregory Bell, had written the Agreement with the intent that it be legally ineffective, as part of a scheme to defraud Plaintiffs, and with the idea that this fraud would give Marwan more time to repay the original loan. If the business became profitable, after several years Marwan would pay Plaintiffs the amount originally loaned to him, and then dissolve the partnership by forming a corporation. All payments would be characterized as repayment of the original loan, and not distribution of profits. After the formation of the corporation, Plaintiffs would not receive any further distributions of profits, and it was hoped that any claims by Plaintiffs would be time-barred. This plan was executed but with one exception: without the knowledge of his attorney Gregory Bell, Marwan Chatila caused the Corporation to send regular payments to Zayed and Jamileh Obeidat, which they regarded as distribution of profits due them under the Agreement.

8. Alternatively, Defendants could have recognized that the Agreement was likely invalid at some time after the agreement was signed. As such, Defendants may have regarded Plaintiffs as stockholders in the Corporation until as late as 2009.

9. On September 4, 1990 plaintiffs and Marwan Chatilla signed the Agreement, which purported to eliminate Jeanette Chatilla's interest in the M & J Carpet Cleaning Partnership ("the Partnership") and give Zayed and Jamilah Obeidat a fifty percent (50%) equity interest in the Partnership in exchange for a $9,000 capital investment.

10. Marwan Chatila, Zayed Obeidat, and Jamilah Obeidat signed the Agreement. Jeanette Chatila did not sign the Agreement. Although the Agreement contained lines for the signatures of Marwan Chatilla, Zayed Obeidat, and Jamilah Obeidat, the Agreement did not contain a line for the signature of Jeanette Chatila.

11. The Agreement gives all Partnership management authority to Marwan Chatila, with Zayed and Jamilah Obeidat "silent partners" who share in the profits of the Partnership without liability for debts.

12. The Partnership changed its organizational structure to a corporation and incorporated as M & J Carpet Cleaning, Inc. ("the Corporation") on February 16, 1996.

13. When the Corporation was formed, Zayed and Jamileh Obeidat were not issued stock.

14. In 1992 and 1993, Zayed and Jamileh Obeidat received payments from the Partnership and approved by Marwan Chatila.

15. In 1998, 2000, 2001, 2002, and 2003 Zayed Obeidat and Jamileh Obeidat received payments from the Corporation approved by Marwan Chatila.

16. In 2005 Zayed and Jamileh Obeidat directed that payments from the Corporation temporarily be made to their son, Marwan Obeidat.

17. In 2005 and 2006 Marwan Obeidat received payments from the Corporation approved by Marwan Chatila.

18. In 2003 and 2006 Marwan Chatila told Zayed Obeidat and Jamileh Obeidat that the business was losing money and no payments were due under the Agreement.

19. In 2009 Marwan Chatila told Zayed Obeidat that he had repaid all the capital invested and that Zayed Obeidat and Jamileh Obeidat had no equity interest in the business.

20. The Agreement was written by Gregory Bell, an employee of Bell, Gould and Scott, P.C. ("the Law Firm").

23. The Agreement was notarized by Kate Nay, an employee of the Law Firm.

21. In 2010 correspondence, Gregory Bell described the Agreement as "a legal nullity."

22. The Agreement replaced a previous agreement between plaintiffs and Marwan Chatila.

23. Gregory Bell stated that the Obeidats had no claim because the $9,000 was a loan, which had been repaid in 1995.

24. Gregory has been Marwan Chatila's attorney since before the Agreement was signed.

25. The Agreement was executed in the offices of Bell, Gould and Scott, P.C.

## JURISDICTION AND VENUE

26. Jurisdiction is proper under 28 U.S.C. § 1332(a)(2). Plaintiffs Zayed Obeidat and Jamileh Obeidat are citizens of Jordan, a foreign country. Defendants Marwan Chatila and Jeanette Chatila are citizens of Oregon. Defendants M & J Carpet Cleaning Partnership and Gregory Bell, are citizens of Colorado. Defendants M & J Carpet Cleaning, Inc. and Bell, Gould and Scott, P.C. are corporations incorporated under the laws of Colorado, with their principal place of business in Colorado. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

27. Venue is proper because virtually all events and transactions related to this suit took place in Colorado, the home of the Partnership and the Corporation.

## CLAIMS FOR RELIEF IN THE ALTERNATIVE

### CLAIM ONE: BREACH OF FIDUCIARY DUTY

28. Paragraphs 1 through 27 are incorporated by reference.

29. If the Agreement transferred an equity interest in the Partnership to plaintiffs, then plaintiffs claim that Marwan Chatila breached his fiduciary duty when he formed the Corporation and did not transfer fifty percent (50%) of the stock in the Corporation to plaintiffs.

30. Plaintiffs demand that a constructive trust be established and that Marwan Chatila be directed to properly wind up the Partnership and transfer fifty percent (50%) of the stock in the Corporation to plaintiffs.

31. Plaintiffs also demand that the Corporation pay them their share of profits due under the Agreement.

32. Plaintiffs further demand that, as described in the original agreement, Marwan Chatila either dissolve the Corporation and pay plaintiffs fifty percent (50%) of the proceeds, or pay plaintiffs fifty percent (50%) of the current value of the Corporation.

## CLAIM TWO:  BREACH OF CONTRACT

33. Paragraphs 1 through 32 are incorporated by reference.

34. If the Agreement did not transfer an equity interest to plaintiffs, then plaintiffs demand damages from Marwan Chatila and the Partnership for breach of contract.

35. Because Marwan Chatila entered into the Agreement on behalf of the Partnership, plaintiffs demand damages from partner Jeanette Chatila.

36. The amount of the damages claimed is equal to fifty percent (50%) of the value of the Corporation, plus the share of profits due plaintiffs under the Agreement.

## CLAIM THREE:  EQUITABLE ESTOPPEL

37. Paragraphs 1 through 36 are incorporated by reference.

38. If the Agreement did not transfer an equity interest, then plaintiffs demand that Marwan Chatila be estopped from denying that plaintiffs are not owners of fifty percent (50%) of the Corporation's stock.

39. Plaintiffs demand that Marwan Chatila transfer ownership of fifty percent (50%) of the total stock in the Corporation to Zayed Obeidat and Jamileh Obeidat.

40. Plaintiffs also demand that the Corporation pay them their share of profits due under the Agreement.

41.     Plaintiffs further demand that, as described in the original agreement, Marwan Chatila either dissolve the Corporation and pay plaintiffs fifty percent (50%) of the proceeds, or pay plaintiffs fifty percent (50%) of the current value of the Corporation.

### CLAIM FOUR:  EQUITABLE ESTOPPEL & BREACH OF FIDUCIARY DUTY

42.     Paragraphs 1 through 41 are incorporated by reference.

43.     If the Agreement did not transfer an equity interest, then plaintiffs demand that Marwan Chatila be estopped from denying that plaintiffs were partners in the Partnership.

44.     Plaintiffs claim that Marwan Chatila breached his fiduciary duty when he formed the Corporation and did not transfer fifty percent (50%) of the stock in the Corporation to plaintiffs.

45.     Plaintiffs demand that a constructive trust be established and that Marwan Chatila be directed to properly wind up the Partnership and transfer fifty percent (50%) of the stock in the Corporation to plaintiffs.

46.     Plaintiffs also demand that the Corporation pay them their share of profits due under the Agreement.

47.     Plaintiffs further demand that, as described in the original agreement, Marwan Chatila either dissolve the Corporation and pay plaintiffs fifty percent (50%) of the proceeds, or pay plaintiffs fifty percent (50%) of the current value of the Corporation.

### CLAIM FIVE:  COMMON LAW FRAUD

48.     Paragraphs 1 through 47 are incorporated by reference.

49. Marwan Chatila, the Partnership, Gregory Bell, and the Law Firm engaged in a fraud against plaintiffs in violation of the common law.

50. Marwan Chatila, the Partnership, Gregory Bell, and the Law Firm knew before Plaintiffs signed the Agreement that the Agreement would not transfer an equity interest in the Partnership to plaintiffs, because Gregory Bell intentionally drafted the Agreement to be legally ineffective.

51. Marwan Chatila, the Partnership, Gregory Bell, and the Law Firm concealed from Plaintiffs the material fact that the Agreement was legally ineffective in transferring an equity interest in the Partnership to Plaintiffs.

52. Marwan Chatila, the Partnership, Gregory Bell, and the Law Firm knew that they were concealing a material fact that in equity and good conscience they should disclose, as Plaintiffs would not reasonably trade a $9,000 debt for a "legal nullity."

53. Plaintiffs were ignorant of the fact that was concealed, and believed that the Agreement transferred to them an equity interest in the Partnership. Plaintiffs reliance that Gregory Bell had drafted a legally effective agreement was justified.

54. Marwan Chatila, the Partnership, Gregory Bell, and the Law Firm concealed the fact that the Agreement was ineffective in transferring to Plaintiffs an interest in the Partnership with the intention that Plaintiffs should enter into the Agreement, which Plaintiffs did.

55. Marwan Chatila, the Partnership, Gregory Bell, and the Law Firm acted on the concealment by writing an ineffective Agreement, inducing Plaintiffs to sign the agreement, and then claiming that Plaintiffs were not owners in the business, resulting in damage to Plaintiffs.

56. Marwan Chatila, the Partnership, and the Corporation actively concealed the fraud by sending periodic payments to Plaintiffs.

## PRAYER FOR RELIEF IN THE ALTERNATIVE

Wherefore, Plaintiff respectfully requests that this Court enter a judgment either:

A. Finding that the Partnership was not properly wound-up and that a constructive trust should be established for Zayed Obeidat and Jamileh Obeidat consisting of fifty percent (50%) of the Corporation's stock, and ordering Marwan Chatila to transfer to Plaintiffs fifty percent (50%) of the Corporation's stock, and ordering the Corporation to pay Plaintiffs the share of profits due under the Agreement, and ordering Marwan Chatila to either dissolve the Corporation and pay Plaintiffs fifty percent (50%) of the proceeds or pay Plaintiffs fifty percent (50%) of the value of the Corporation; or

B. Finding that Marwan Chatila and the Partnership are in breach of contract with respect to the Agreement, and finding that Marwan Chatila, the Partnership, and Jeanette Chatila are jointly and severally liable for money damages equivalent to fifty percent (50%) of the value of the Corporation, plus the share of profits from the Corporation due Plaintiffs under the Agreement; or

C. Finding that Marwan Chatila should be estopped from denying that Zayed Obeidat and Jamileh Obeidat own fifty percent (50%) of the Corporation's stock, and ordering Marwan Chatila to transfer to Plaintiffs fifty percent (50%) of the Corporation's stock, and ordering the Corporation to pay Plaintiffs the share of profits due under the Agreement, and ordering Marwan Chatila to either dissolve the Corporation and pay Plaintiffs fifty percent (50%) of the proceeds or pay Plaintiffs fifty percent (50%) of the value of the Corporation; or

      D.      Finding that Marwan Chatila and the Partnership should be estopped from denying that Zayed Obeidat and Jamileh Obeidat were partners in the Partnership, and finding that a constructive trust should be established for Zayed Obeidat and Jamileh Obeidat consisting of fifty percent (50%) of the Corporation's stock, and ordering Marwan Chatila to transfer to Plaintiffs fifty percent (50%) of the Corporation's stock, and ordering the Corporation to pay Plaintiffs the share of profits due under the Agreement, and ordering Marwan Chatila to either dissolve the Corporation and pay Plaintiffs fifty percent (50%) of the proceeds or pay Plaintiffs fifty percent (50%) of the value of the Corporation; or

      E.      Finding that Marwan Chatila, Gregory Bell, the Partnership, and the Law Firm defrauded Plaintiffs under the common law, and that they and Jeanette Chatila are jointly and severally liable for money damages equivalent to fifty percent (50%) of the value of the Corporation, plus the share of profits from the Corporation due Plaintiffs under the Agreement.

Dated: April 11, 2011

Respectfully submitted,

/s/ Eric Hayes Petty
Eric Hayes Petty, CO 41460
Rocky Mountain Legal Counsel, P.C.
2000 S. College Ave, Suite 220
Fort Collins, CO 80525-1484
(970) 416-7652
eric.petty@rmlegalcounsel.com

Attorney for
Zayed Obeidat and

>Jamileh Obeidat
>PO Box 2449
>Irbid, Jordan
>Phone: 0096227101109

## CERTIFICATE OF SERVICE

I, Eric Hayes Petty, hereby certify that a true copy of the foregoing SECOND AMENDED COMPLAINT was filed with the Court and served upon Marwan Chatila, Jeanette Chatila, M & J Carpet Cleaning Partnership, M & J Carpet Cleaning, Inc, Gregory Bell, and Bell, Gould and Scott, P.C. via ECF on the 11th day of April, 2011.

/s/ Eric Hayes Petty

Eric Hayes Petty